# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA, )
)
) 2:16-cr-00139-6
v. )
)
)
WILLIAM RICHARDSON, )

Defendant.

## OPINION

**Mark R. Hornak, United States District Judge**

Defendant William Richardson pleaded guilty to Counts 1–7 and 9 of the Superseding Indictment following a bench trial (which ended up lasting one day) at which he represented himself, with his court-appointed counsel, R. Damien Schorr, serving as standby counsel. At the conclusion of the trial, Richardson revoked his waiver of counsel, and openly and without reservation accepted and confirmed Schorr's representation for the remainder of all proceedings in this case. Mr. Richardson's case was set to advance to sentencing on January 11, 2019. Since the events culminating in Richardson's change of plea, two main clusters of issues have resulted in a continuance of sentencing to a date uncertain. (*See* ECF No. 705.) First, Richardson has filed a series of *pro se* letters, some styled as motions, purporting to terminate Mr. Schorr's representation, challenging a number of the Court's pretrial rulings, and disputing the sufficiency of the evidence that either was or would have been presented at trial to obtain a conviction. All of these filings have apparently been without the authorization or assistance of his counsel.[1] Second,

---

[1] Mr. Schorr initially filed a Motion to Permit Defendant to Proceed Pro-Se (ECF No. 675), but then partially revised his position in Memorandum Concerning Pro-Se Representation (ECF No. 695), in which he clarified that he would "not quit this case barring some irreconcilable conflict of interest" and left to the Court to find whether Richardson had forfeited his right to self-representation.

Richardson filed a "Notice of Appeal" of the Court's pretrial Order at ECF No. 625. (*See* Notice of Appeal, ECF No. 686; *see also* Notice of Appeal, ECF No. 717 (duplicate of ECF No. 686).) The Court held a hearing to address these issues on October 25, 2018.

For the following reasons, Richardson's requests to proceed *pro se* or for other relief (Motion to Permit Defendant to Proceed Pro-Se (counseled), ECF No. 675; Motion [for] Peppers Type Colloquy to Litigate Pro Se Motions for Sentencing, ECF No. 680; Pro Se Motion for Peppers Type Colloquy, ECF No. 687; Motion to Compel the Court to Address Facts, Conclusion and Law, ECF No. 703; Motion to Compel the Court to Address Facts Conclusions and Law, ECF No. 713; Motion to Remove Counsel and Recuse Presiding Judge, ECF No. 715; Motion [for] Peppers Type Colloquy, ECF No. 716; Motion to Dismiss, ECF No. 718; and Motion for Presentence Mediator, ECF No. 719) will be denied. To the extent that ECF No. 727 requests relief from this Court, it too will be denied. Mr. Schorr's Motion to Withdraw Document [686] Notice of Appeal, ECF No. 693, will be granted.

## I. Background

The facts of this case are abundantly familiar to its participants, and so the Court will only recount those necessary to the disposition of the pending motions.[2] On September 6, 2018, a one-day bench trial was held, at which Mr. Richardson represented himself with Mr. Schorr serving as standby counsel. At the conclusion of that day's testimony (in the late afternoon/early evening), Mr. Richardson informed the Court that he wished to change his plea to guilty as to Counts 1–7 and 9. The Government, Mr. Richardson, and Mr. Schorr advised the Court that Count 8 (charging a weapons charge with a lengthy mandatory minimum sentence) would still proceed to trial. (Transcript of Excerpt of Non Jury Trial, ECF No. 700 ("Trial Tr."), at 4.)

---

[2] A more complete rundown of the facts of Richardson's case can be found in the Court's Opinion at ECF No. 624.

Richardson also informed the Court that he "want[ed] Mr. Schorr to be [his] lawyer for everything from here on out." (*Id.*) He informed the Court, under oath, that it could treat his request to represent himself as withdrawn and that Mr. Schorr would be his "lawyer for all purposes in this case." (*Id.*) In response to the Court's statement that it would no longer entertain his requests to proceed *pro se*, and that it would be "Mr. Schorr all the way to the end, whatever the goal line looks like here," Defendant replied "Yes, sir." (*Id.* at 5.) The Court ultimately concluded that, given the late hour, it would be prudent to conduct the change of plea hearing the following day, on September 7, 2018, and adjourned for the day.

The next morning, September 7, 2018, Mr. Richardson was again sworn in, and the Court conducted a colloquy to confirm that his mental and physical state had not changed from the previous evening. (Transcript of Change of Plea Hearing, ECF No. 699 ("Change of Plea Tr."), at 5–6.)[3] At that time, Defendant again confirmed that he was represented by Mr. Schorr. (*Id.*) He confirmed that he had spoken to Mr. Schorr about entering a plea of guilty. (*Id.*) The Court confirmed with Mr. Schorr that he had no doubt as to Mr. Richardson's competency to participate in the proceedings and plead guilty. (*Id.* at 5–6.) Mr. Richardson then confirmed again that he was represented by Mr. Schorr, and that Schorr had answered all of his questions about the charges

---

[3] The Court has conducted that same competency colloquy in every in-court proceeding with Mr. Richardson. While he has usually expressed what the Court perceives as over-inflated statements of his own legal abilities, the Court has never concluded that there was any question of competency under 18 U.S.C. § 4241, and no one had ever suggested such to be the case. In particular, at the times Richardson waived his rights to counsel, revoked that waiver and confirmed Mr. Schorr would represent him all the way through these proceedings, and then pleaded guilty, the Court conducted especially searching inquiries of Mr. Richardson, under oath. In each such instance, the Court concluded that he was wholly lucid, aware, and was fully competent to understand the nature of the proceedings, the nature of the charges against him, and their consequences, and could (if he so elected) fully participate with counsel in his defense (or, if he had elected to do so, to represent himself in terms of his mental competency to do so). It now appears that Mr. Schorr is concerned at this point about Mr. Richardson's current competency, particularly as to sentencing. (ECF No. 724.) The Court will proceed in such regards as appropriate pursuant to 18 U.S.C. § 4241. The Court nonetheless concludes that as to the retrospective matters set out in this Opinion, this development does not implicate the matters set out, considered, and decided here. Should later-developing events require the Court to revisit these matters, the Court will do so.

3

listed in the Superseding Indictment. (*Id.* at 8–9.) During the plea colloquy, the Court again asked, "Mr. Richardson, are you satisfied with the job that Mr. Schorr has done for you as your lawyer," to which Defendant responded "[y]es, sir." (*Id.* at 42.) Mr. Richardson then proceeded to enter his plea of guilty as to Counts 1–7 and Count 9 of the Superseding Indictment. (*Id.* at 42–47.)[4] The Court then asked Mr. Richardson if there was "anything you would like to bring to my attention or ask me, sir," to which Richardson replied *"Thank you, Your Honor, for your patience on my case and no, sir."* (*Id.* at 51 (emphasis added).)

Mr. Richardson's amiable manner toward the Court and Mr. Schorr was to be short-lived. All told, Mr. Richardson has filed twenty-four (24) letters and *pro se* motions (though some are duplicates of others) with the Court in the two months since he changed his plea to guilty and accepted and affirmed, under oath, that Mr. Schorr would represent him for the duration of all proceedings in his case. (ECF Nos. 669, 674, 677, 678, 680, 681, 682, 686, 687, 689, 696, 703, 706, 707, 709, 711, 713, 714, 715, 716, 717, 718, 719 & 727.) These filings oscillate between at times wishing to protect the Court's reputation and accusing the Court of corruption and overt racism.[5] They express a critique of Mr. Schorr that is, at minimum, sulfuric. They repeatedly contest the Court's previous rulings. In his letters, Richardson has also concocted a shifting story charging Schorr with "high fiving" other individuals in the courtroom following Richardson's

---

[4] At this hearing, the parties disclosed that they had reached an oral plea agreement whereby Count 8 would be dismissed without prejudice pending sentencing, at which time it would be dismissed with prejudice. (Change of Plea Tr., at 3.) The Court has accepted that plea agreement. (*Id.* at 29.) Given the possible mandatory sentence as to Count 8, that deal is quite advantageous to Mr. Richardson.

[5] This is not the first time that Mr. Richardson has exhibited a mercurial attitude toward the Court. For instance, Richardson, in a letter sent May 2, 2017, apologized to the Court, assured the Court that he understood that the Court would "rule fairly and by the law," and stated that "you [the Court] will personally will hear no more remarks about you from me." (Correspondence, ECF No. 243.) Although Richardson's positive (or at minimum neutral) tone to the Court continued for the Summer of 2017, even as his harangues of counsel in correspondence with chambers increased over the ensuing months, Mr. Richardson's assessment of the Court moved to the dark side, and Richardson returned to his accusations of the Court as of his letter dated August 21, 2017. (Correspondence, ECF No. 314 ("[A]re you gonna keep ignoring me showing the appear[a]nce of impropriety as if there is a personal bias or some sort of prejudice towards me here?").)

4

statement on September 6, 2018, that he intended to plead guilty. The Court will briefly summarize Richardson's filings below.

A mere four days[6] after the change-of-plea hearing, Richardson wrote the Court a letter requesting to file and litigate his own sentencing memorandum and accusing Mr. Schorr of "running around giving high fives once I decided to plea," and "running around the Courtroom high fiveing everybody pulling up his pants acting like he won a case." (Correspondence, ECF No. 669.) He also called Mr. Schorr a "peice [sic] of sh*t" and specified that "that's why God is punishing his ass gave him [redacted medical information] because he's deserving of all of it." (*Id.*)[7]

Five days later, on September 16, 2018, Richardson penned another letter challenging the Court's ruling on his suppression motion, lodging complaints regarding the sufficiency of the evidence, and repeating his accusation that Schorr "was running around the courtroom giving high fives." (Correspondence, ECF No. 674.) Then, on September 24, 2018, Richardson again asserted there was no factual basis for his plea, continued to contest the Court's suppression ruling of August 24, 2018, and told the Court "I'm sure you heard how my dumb ass lawyer jumped up high fiving the Court once I was coached to plea." (Correspondence, ECF No. 677.) In fact, the Court had not heard this from any individual other than Mr. Richardson in his letter, and observed no such thing.[8] Nevertheless, Richardson persisted in attesting that "[h]e also high fived the whole

---

[6] The Court refers to the dates of the letters themselves, not the dates the letters were received by Chambers.

[7] As to all of the Richardson letters referred to in this Opinion, the Court has placed them on the ECF Docket, but given their profane, personal attacks on those involved in this case (particularly various prosecution and defense counsel), they have been given "case participant" access only.

[8] It is the Court's practice to remain in the courtroom until the United States Marshals have assisted a criminal defendant in custody with leaving the room. The Court did exactly that after Mr. Richardson entered his guilty plea. *At no time* before he exited the courtroom after his guilty plea did he do anything that suggested any "high five" had occurred, ever. Mr. Richardson was as cogent, calm, contained, and relaxed as when he actually pleaded guilty.

5

damn courtroom" and continued to expatiate on the supposed insufficiency of the evidence to support the charges against him. (Correspondence, ECF No. 678.)

Richardson's volcanic, profane diatribes continued with a filing styled as a "Motion for Peppers Type Colloquy to Litigate Pro Se Motions for Sentencing" in which he accused Mr. Schorr of being an "agent for the AUSA" and that Richardson "watched while [Schorr] ran around the court room after he took the plea and high-fived people overjoyed." (Pro Se Motion for Peppers Type Colloquy to Litigate Pro Se Motions for Sentencing, ECF No. 680.) He then filed a Motion for Acquittal as to Counts 1–3, accusing the United States of fabricating evidence and again challenging the wiretap. (Pro Se Rule 29 Judgment of Acquittal on Counts 1, 2, 3 Insufficient Evidence to Support Conviction, ECF No. 681.) In his next filing, he claimed that he pleaded guilty "because I knew I never was in possession of no large amount of pills nor was I in a conspiracy." (Correspondence, ECF No. 682.)[9]

Richardson next filed a Notice of Appeal, in which he accused the Court of "bias an[d] discrimination" and "condon[ing] every criminal act done by the prosecution." (Notice of Appeal, ECF No. 686.) Having turned his attention to the supposed corruption of the Court, Richardson did not stop there. He then stated his intention to object to the entire indictment, continued to request the return of his seized property, threatened, toward Assistant United States Attorney Brendan Conway and Special Agent Robert Werner, to "destroy their ass," and telling the Court "Are we clear f**k that order I'm not working with this motherf**ker [Schorr] and you or nobody else can make me." (Correspondence, ECF No. 689.)

---

[9] At the one-day bench trial, the Government adduced substantial wiretap evidence of Richardson's communications, along with the testimony of another Defendant, Jacqueline Bauer. Her testimony placed her in the thick of pill distribution by and through Richardson. Her direct testimony (not yet subject to cross-examination) could be fairly described as so far being credible—and devastating to Richardson's case. (*See generally* Tr. of Excerpt of Jury Trial, Testimony of Jacqueline Bauer, ECF No. 698.)

6

The polemics continued. Richardson next told the Court "I don't know what your problem is but I never waived sh*t to let this motherf**ker represent me and this bullsh*t you're trying to f**king pull ain't working on me my man." (Correspondence, ECF No. 689–2.) He again accused the Court of being a "corrupt ass Court," stated that he "didn't waiver sh*t," and that "you have no f**king choice but to acknowledge my Rule 32b and Rule 29 and my appeal to that weak ass opinion." (*Id.*) He next emphasized that his appeal to the Third Circuit would result in "no more racist ass judge rulings" and told the Court that "you're not getting away with all that criminal sh*t you done to all these people f**k that sh*t" and "you're corrupt as f**k and need to be exsposed [sic]." (Correspondence, ECF No. 696.) He also said "the b***h lawyer stays in the b***h's place tell him to high five that." (*Id.*) Richardson then filed a Motion to Compel the Court to Address Facts Conclusion and Law (ECF No. 703), which again accused the Court of "numerous corrupt criminal ruling[s]" and "think[ing] that he is above the law." (*Id.*)[10]

The Court then held a hearing on October 25, 2018, to address Mr. Richardson's various filings to date. (ECF No. 701.) There, Mr. Richardson renewed his contention that Mr. Schorr "high-fived" others in the courtroom on the afternoon of the bench trial in his case. His story, however, had changed. In his next letter, he averred that Schorr "celebrate[d] with the stenographer by high fiving her when I plead." (Correspondence, ECF No. 706.) He also appeared to walk back some of his accusations of the Court, instead declaring "*I like you man you're fair as can be to me.*" (*Id.* (emphasis added).)

Mr. Schorr then filed a supplement to the October 25, 2018, hearing, in which he suggested that Mr. Richardson may have misunderstood an exchange that occurred between Schorr and the Court Reporter. (Supplement to October 25, 2018 Hearing, ECF No. 702.) Schorr stated that during

---

[10] At this hearing, the Court orally ordered Richardson to cease his profane attacks on all counsel and the Court staff, and to cease filing his vitriolic, profane tirades, at peril of his being cited for contempt.

7

a break in Government Witness Jacqueline Bauer's testimony at trial on September 6, 2018, Schorr (who had at that point assisted Richardson with cross-examining other witnesses) approached the Court Reporter to ask that a transcript of Bauer's testimony witness be immediately be prepared for use during cross-examination of her after her direct examination, which would conclude the next day. (*Id.*) Additionally, at the end of the day Schorr advised the Court Reporter that he would need transcripts for the testimony of the two police officers who had testified earlier on that day, because there would remain a need for them at a trial still to be conducted on Count 8 of the Superseding Indictment. (*Id.*) Because expedited transcripts are priced significantly higher than transcripts that are ordered and delivered in the ordinary course of business, they provide more income for court reporters than the usually prepared transcripts. (*Id.*) Schorr suggested that this may have led to an exaggerated reaction to his request by the Court Reporter. Based on the physical layout of the courtroom, Richardson would not have been able to hear such conversation about the transcripts, but may have seen a physical reaction of the Court Reporter.

A few days later, Richardson, undeterred, asserted that a United States Marshal had apparently witnessed the alleged "high five." He then requested a hearing to "put [the Court's] deputy Babik that lying stenographer and Schorr under oath on the stand . . . . and ask them again with the . . . U.S. Marshal present!!" (Correspondence, ECF No. 707.) He pledged to reveal the name of the Marshal who supposedly witnessed the incident "on the date" of the hearing. (*Id.*) Out of apparent concern for the Court, he also stated "I hate a damn liar and to be made a fool of like they done you is crazy the people you trust!!" (*Id.*)

If things weren't already ugly, they got there when Richardson responded to Mr. Schorr's filing at ECF No. 702. There, he repeatedly used the word "retarded" to describe an individual, and accused the Court of knowing about the purported high five "the whole f\*\*king time."

8

(Correspondence, ECF No. 709.) He attached attorney-client communications in which Mr. Schorr explained that he had requested the police officers' testimony during trial in anticipation of the trial on Count 8, but that Ms. Bauer's testimony was requested later. (ECF Nos. 709–1 & 709–2.) Mr. Richardson appears to interpret this explanation as impeaching Mr. Schorr's statements as to when he ordered the expedited transcripts from the Court Reporter.

In his Correspondence, ECF No. 711, Mr. Richardson returned his focus to the strength of the Government's evidence, stating among other things that "I didn't plea because I'm guilty I was disgusted with being in the presence of hater's that has no case," and "[a]ll of the conspiracy counts are bullsh*t." (ECF No. 711.) He also commanded the Court to "man the f**k up to what you done." (*Id.*) He next engaged in a homophobic diatribe against the Court and counsel. (Correspondence, ECF No. 714.) In that letter, he also threatened "I'm gonna destroy all your sh*t and all of you with it!! I'll never stop until I got every f**king one of you to atone for your f**king crimes to us!" and signed it "Get Ready." (*Id.*)

Richardson then filed a Motion to Remove Counsel for Ineffective Representation and Motion to Recuse Presiding Judge, ECF No. 715, in which he again accused the Court of corruption and racism and averred that the Court coordinated with the United States and with Mr. Schorr to deprive Richardson of his constitutional rights. (ECF No. 715.) Finally, he filed a Motion for Presentence Mediator, ECF No. 719, accusing Mr. Schorr of lying to the Court about the "high five," and accusing the United States of malicious prosecution and fabrication, among other things. (ECF No. 719.)[11]

---

[11] In addition to the aforementioned motions and correspondence, Richardson filed ECF Nos. 713, 716, 717, and 718 which appear to the Court to be duplicates of ECF Nos. 703, 680, and 686, and 681 respectively.

## II. The Alleged High Five

Despite the fervency (and frequency) of Mr. Richardson's assertions about this supposed "high five," the Court sees no reason to either credit his account, or to consider it even if possibly true. For one thing, his story has changed multiple times over the weeks. What began as a tale of Mr. Schorr running around the courtroom giving high fives to "everybody," (ECF No. 669), then morphed into a contention that Mr. Schorr high fived "the stenographer." (ECF No. 706.) Richardson next added the detail that an unnamed United States Marshal witnessed that event, (ECF No. 707), something he did not see fit to inform the Court of during the October 25 hearing.

But even if Richardson had kept his story straight, the Court would not give any weight to it because Richardson had multiple opportunities on the morning *after* the alleged incident to bring it to the Court's attention. He did just the opposite. During his change-of-plea hearing that second morning, the Court asked Richardson under oath if he was represented by Schorr (answer: yes), if he was satisfied with the job Schorr was doing (again, answer: yes), and if there was anything he wanted to bring to the Court's attention or ask the Court (answer: no). If it were true that Schorr, on just the previous evening, had indeed run around the courtroom in a display that in other contexts has been penalized as "excessive celebration," then Mr. Richardson should have and would have immediately alerted the Court the next day that something was awry. Instead, he competently asserted his satisfaction with Mr. Schorr as he pleaded guilty under oath to Counts 1– 7 and 9 of the Superseding Indictment and affirmatively thanked the Court for its attention to the case. There is no "there there" as to this issue.

## III. Representation Status

Criminal defendants have a constitutional right to conduct their own defense. *Faretta v. California*, 422 U.S. 806, 819 (1975). But this right is not absolute. *Martinez v. Court of Appeal*

*of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 160 (2000). The Court may terminate self-representation despite a defendant's continued wish to represent herself, if she "deliberately engages in serious and obstructionist misconduct." *Faretta*, 422 U.S. at 834 n.46; *Thomas v. Carroll*, 581 F.3d 118, 125 (3d Cir. 2009).[12]

The Court's authority in this regard is in tension with the right to waive counsel, and in particular with the conclusion that a defendant can waive and then reassert the right to self-representation. *See McKaskle v. Wiggins*, 465 U.S. 168, 182–84 (1984) ("Once a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced.").

Here, although Mr. Richardson waived his right to counsel and then later affirmatively revoked his waiver (or, using the mirror image, he asserted his right to self-representation and then later waived it), his right to self-representation has limits.[13] "A court may conclude that a defendant who intends nothing more than disruption and delay is not actually tendering a knowing, voluntary and intelligent waiver of counsel, and has not unequivocally asserted the constitutional right to

---

[12] The Court is not denying his request on the grounds that it is ill-advised. "Such a choice is almost always ill-advised." *Alongi v. Ricci*, 367 F. App'x 341, 343 (3d Cir. 2010). Given what the Court observed of Richardson's performance at his one-day trial, that observation is profoundly apt here. Yet that is not the basis for the Court's denial of his request.

[13] One could read fairly and easily Richardson's multiple on-the-record statements at the September 7, 2018, hearing that Mr. Schorr would be his lawyer for the remainder of the proceedings as directly calling into question whether his now-renewed request for self-representation is adequately "clear and unequivocal," as *Faretta* requires. 422 U.S. at 835. And Mr. Richardson has certainly delayed his sentencing by requesting, after his change of plea, to represent himself. *See* Order Granting Motion to Continue, ECF No. 708 (granting motion to continue sentencing). The interests of the Court in "prevent[ing] a defendant from taking advantage of and manipulating the mutual exclusivity of the rights to counsel and self-representation" are strongest at trial, when the logistical challenges of honoring such a back-and-forth are more striking. That said, Mr. Richardson's machinations throughout this case, and now, starkly demonstrate that no matter his motive, his conduct has materially and significantly interfered with the orderly administration of justice. The Court's analysis here is based on Richardson's bad faith and obstructive conduct (including as evidenced by his profane renunciation of his abject and absolute under-oath affirmation that Mr. Schorr was and would be his lawyer through all proceedings in this case), but not solely on his changes-of-heart regarding Schorr's representation.

11

conduct his/her own defense. While this determination may well present difficulties, it is the kind of inquiry district courts routinely make." *Buhl v. Cooksey*, 233 F.3d 783, 797 (3d Cir. 2000). The Court does not read *Buhl* to require a conclusion that a defendant's conduct can *only* waive self-representation when he "intends nothing more than disruption and delay," but rather that such a finding is sufficient for waiver of self-representation rights.

The Court finds the analysis in *United States v. Young*, 2018 WL 1878209 (M.D. Pa. April 19, 2018), particularly instructive. There, the District Court concluded that "although Defendant has clearly and unequivocally expressed a desire to proceed *pro se*, he has likewise demonstrated, through pretrial conduct, his conscious decision to waive that right." 2018 WL 1878209, at *2. The defendant in *Young* had repeatedly contended that he was being prosecuted in bad faith, contended that case law proved he was innocent and his constitutional rights were being violated, interrupted the court on multiple occasions, refused to answer simple questions, was argumentative with the Court, and "most notably, Defendant unequivocally demonstrated a refusal to accept the court's prior ruling on his suppression motion." *Id.*

Similarly, here, Richardson has averred, his guilty pleas notwithstanding, that the United States Attorney, Mr. Schorr, and at times, this Court, are in cahoots and working in tandem to deprive him of his rights. His in-court behavior, even with the presence of standby counsel, does not reflect the basic level of decorum and procedural awareness expected in such proceedings. For instance, during the trial testimony of Officers Brian Martin and Charles Higgins at trial, Richardson—after being warned not to—repeatedly attempted to argue or make lengthy statements as opposed to cross-examining the witnesses using the question form. (Trial Tr. Excerpt, ECF No. 668, at 13:15–17; 14:14–15; 16:17–19; 18:7–9 ("He is trying to say the guns is mine. I got evidence to prove they charged the guns to somebody else."); 22:2–3 ("Basically what you are saying is

there is no evidence to prove beyond a reasonable doubt that these pills actually was mine?"); 25:7–11; 29:5–9 ("What I'm trying to establish here is since there were four people in the house— ".) The Court also had to remind Richardson not to use profanity in the courtroom, (*id.* at 24:23–24), not to interrupt, (*id.* at 28:10–13), and not to testify when he was "warming up" to ask questions, (*id.* at 68:12–13).

Beyond the courtroom, Richardson has via letter, *ad naseum*, attacked this Court, the Court's staff, and counsel, leveling accusations ranging from incompetence to racism and worse. He has made repeated lewd comments, particularly toward his own counsel,[14] that would be out of place amidst the pressures of a military boot camp. And, like the defendant in *Young*, he has perpetually refused to accept the Court's prior rulings on his pretrial motions.

His tactics have already resulted in multiple lengthy delays throughout the proceedings in this case as each new counsel came on board, along with a continuance of his sentencing process. To permit him to proceed *pro se* (again) now would undoubtedly lead to more such delays and is

---

[14] This very same conduct has pervaded these proceedings. The record in the case reflects similar (but slightly lower-temperature) submissions to the Court regarding his four (4) prior appointed lawyers. (*See, e.g.*, Correspondence, ECF No. 90 ("I've informed you [of] the sheer p[e]rjury and prosecutor[ial] misconduct and vindictiveness and my lawyer [assistant Federal Public Defender]'s in on it . . . . I'm done fighting this lawyer we have nothing left to talk about."); Correspondence, ECF No. 219 ("[T]his lawyer [CJA counsel] is not at all p[er]forming as I've requested and is again ineffectively representing me . . . simply he's trying to work with the D.A. and you! I'm due ad[e]quate counsel he is not it stop giving me this (Buddy) lawyers and give me a lawyer that's gonna do his job!"); Correspondence, ECF No. 276–1 ("I'm certain this wanna be lawyer [second CJA counsel and third lawyer] is gonna be problems. . . . [H]e's not gonna present my evidence sir it's a fact."); Correspondence, ECF No. 408 ("Now we know the lawyer [third CJA counsel and fourth lawyer] isn't gonna do anything because on the Brendan Conway statement [by Mr. Richardson] . . . [that was] designed to draw him out in the open and either he do his job or eliminate hi[m]self he chose the latter to eliminate himself due to if he did his job he'd expose Conway.").) It has been clear to the Court that Richardson has been an extremely difficult (if not abusive) client for each of them. As to each of these prior lawyers, Mr. Richardson's initial commitments to working cooperatively with each of them soon gave way to belligerent invectives when they would not do his bidding by filing pretrial motions precisely as he directed—motions which failed on the merits when this Court eventually permitted Richardson to personally advance them. (*See* Order, ECF No. 625.) They are the same suppression motions he now returns to in his filings. In the case of each such experienced counsel, matters ultimately deteriorated to the point that each advised the Court, with facially good and legitimate reasons, that they could endure no longer as Richardson's counsel, and were professionally compelled to seek withdrawal. (*See* Motion to Withdraw as Attorney, ECF No. 89; Motion to Withdraw as Attorney, ECF No. 244; Motion to Withdraw as Attorney, ECF No. 317; Motion to Withdraw as Attorney, ECF No. 407.)

13

a decision no more likely to be his final one than has been the case with his previous ones. The Court has been more than accommodating with Richardson's requests in the past, including permitting him to present his own *pro se* motions and honoring his desire to represent himself at trial. Mr. Schorr is his fifth court-appointed lawyer. But, particularly concerning the vulgar attacks on the lawyers and the Court's staff and Richardson's unwillingness to accept the adverse rulings on his *pro se* motions, this accommodation is now exhausted.[15]

In light of this record, the Court concludes that Defendant has forfeited his right to represent himself by his repeated obstructionist and disruptive conduct, coupled with his clear, unequivocal, under-oath affirmations that he was absolutely giving up his right to represent himself any further in this Court. *See Faretta*, 422 U.S. at 834 n.46 ("The right to self-representation is not . . . a license not to comply with relevant rules of procedural and substantive law.") Although Defendant has now again forcefully expressed a desire to represent himself, he has with equal force demonstrated, through his conduct at pretrial hearings, the bench trial, and his correspondence with this Court, that he has no intention of abiding by the most basic tenets of decorum or respecting the Court's authority over his case. Therefore, the Court will leave things as they are and have been since Defendant's clear, under-oath statements on September 6, 2018—that Mr. Schorr is Defendant's lawyer, and that Mr. Schorr will continue to represent Richardson in this case, including as to sentencing.

Finally, given the *ad hominem* nature of Richardson's *pro se* filings, this Court will direct the Clerk of Court not to accept any further *pro se* filings or other correspondence directly from Richardson. *See United States v. Vampire Nation*, 451 F.3d 189, 206 n.17 (3d Cir. 2006); *Anderson*

---

[15] Richardson has now moved, again, for the Court's recusal. (Motion to Remove Counsel, Motion to Recuse Presiding Judge, ECF No. 715.) That request is denied, as the Court is aware of no factual or legal basis to conclude that recusal is required, or recommended, under applicable law, and Richardson's dissatisfaction with the Court's rulings provides no such basis.

*v. Dunn*, 6 Wheat. 204, 227 (1821) ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.") All such filings shall be returned to sender.

Richardson is, of course, welcome to discuss any issue he wants to bring to the Court's attention with his counsel, who will ultimately decide whether to raise it. *See McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018) ("Trial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as 'what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence.'" (quoting *Gonzalez v. United States*, 553 U.S. 242, 248 (2008)). Whatever concerns Richardson may have as to counsel's effectiveness in this regard may be raised in post-conviction proceedings, to the extent factually supported and as permitted by law.[16]

## IV.  Notice of Appeal

After pleading guilty to Counts 1–7 and 9 of the Superseding Indictment, Richardson filed a Notice of Appeal (ECF No. 686). (He filed a duplicate of this Notice at ECF No. 717.) He filed this Notice without the involvement of his court-appointed counsel. In his filing, he seeks to appeal the Court's ruling on his suppression motion, his motion for return of property, and his appeal from the detention order. His counsel, Mr. Schorr, has filed a Motion to Withdraw Pro-Se Notice of Appeal (ECF No. 693), and the Government has filed a Statement of Position (ECF No. 697). For the foregoing reasons, the Court will retain jurisdiction over the proceedings and grant Defendant's [Counseled] Motion to Withdraw the Notice of Appeal.

---

[16] From the Court's personal observations, Mr. Schorr has been zealous, patient, thorough, and vigorous in his representation of Mr. Richardson, and has consistently demonstrated to the Court that, should the point come where he has reasonable cause to believe that he should not or cannot continue as counsel under prevailing law, he will so advise the Court.

15

As a preliminary matter, and as set forth above, Richardson has again been represented by counsel since his on-the-record, under-oath affirmation of such on September 6, 2018. This Court need not take action on filings not made through Richardson's counsel. *Cf. United States v. Essig*, 10 F.3d 968, 973 (3d Cir. 1993) (noting that the Court was not required to review a counseled defendant's *pro se* argument; "[i]ssues that counseled parties attempt to raise *pro se* need not be considered except on a direct appeal in which counsel has filed a [brief under *Anders v. California*, 386 U.S. 738 (1967)]"). Although the Court has previously given Richardson considerable latitude to advance his pre-trial motions *pro se*, that latitude ended on September 6, 2018, when the Court reminded Richardson that "you can't go back." (Trial Tr., at 5:3–4.) Richardson is not entitled to hybrid representation. *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984).

As to the appeal itself, the Court concludes it is "substantively frivolous, procedurally improper, and functionally ineffective." *United States v. Wilkes*, 368 F. Supp. 2d 366 (M.D. Pa. 2005). The Court cannot discern any reason, aside from bad faith and delay, for its filing. The Court will retain jurisdiction over these proceedings despite the filing of the Notice. *See Venen v. Sweet*, 758 F.2d 117, 120–122 (3d Cir. 1985).[17]

Concerning the nature of the appeal, interlocutory appeals in criminal cases are reserved for the rare situation in which continuation of the proceedings would preclude vindication of the rights asserted. *See Class v. United States*, 138 S. Ct. 798, 811 (2018) ("[W]e have allowed defendants in federal criminal cases to take an immediate appeal from the denial of a pretrial motion when the right at issue is properly understood to be a right not to be tried."). Here, the

---

[17] The Court of Appeals entered an order at its Docket No. 18-3594 on November 29, 2018, stating that the Orders Mr. Richardson appealed from may not be "final or otherwise appealable." The Government has filed a statement of position advocating the dismissal of the appeal on such grounds. (*See* No. 18-3594, Dkt. No. 311310083.) Mr. Schorr has filed a statement concurring in that view as to current appealability. (*See* No. 18-3594, Dkt. No. 3113101850.)

proper setting for the vindication Richardson seeks is in the Court of Appeals following imposition of sentence. An interlocutory appeal is improper.

Even if it were proper, Richardson's filing is untimely under Fed. R. App. 4(b)(1)(A)(i), as it was filed on October 12, 2018, and the Court's Order on the motions he seeks to appeal was issued on August 24, 2018 (Order, ECF No. 625). The Notice at ECF No. 686 is thus well outside the fourteen-day period for filing a notice of appeal. And substantively, the Court is hard-pressed to identify a reason other than bad faith to appeal the detention order when Richardson previously withdrew his motion to that effect and told the Court it need not rule on it. (*See* Opinion, ECF No. 625, at 1, 21.)

This case will proceed ahead in this Court despite the notice of appeal, unless the Court of Appeals directs otherwise.[18]

---

[18] The Court notes that the Third Circuit has docketed Mr. Richardson's appeal at its No. 18-3594. (ECF No. 720.) As the Third Circuit has recognized:

> [A] district court may be reluctant to proceed when, in order to do so, it must in effect determine that the court of appeals has no jurisdiction. Nevertheless, such a procedure has the salutary effect of avoiding delay at the trial level during the pendency of an ineffective appeal. While this is not an invitation for district courts to resolve thorny issues of appellate jurisdiction, the application of the . . . rule [that a premature notice of appeal does not divest the district court of jurisdiction] is sufficiently clear, and the interest in expediting cases sufficiently strong, that the district courts should continue to exercise their jurisdiction when faced with clearly premature notices of appeal.

*Mondrow v. Fountain House*, 867 F.2d 798, 800 (3d Cir. 1989).

The Court of Appeals, of course, maintains exclusive authority to decide the merits of Mr. Richardson's appeal, even if this Court views the notice of appeal as invalid and improper. Nothing in this Court's opinion should be read to detract from the appellate court's jurisdiction.

## III. Conclusion

For the reasons stated in this Opinion, Defendant's Motions at ECF Nos. 675, 680, 687, 703, 713, 715, 716, 718, 719, and 727 will be denied. Defendant's Motion to Withdraw [686] Notice of Appeal, ECF No. 693, will be granted.

An appropriate Order will follow.

_____
Mark R. Hornak
United States District Judge

Dated: December 6, 2018

cc: All counsel of record